IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Shonni Abernathy, | ) | Criminal No. 2:12-547-RMG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Petitioner's motion to vacate under 28 U.S.C. § 2255

(Dkt. No. 255). For the reasons set forth below, the Court denies the motion.

I.    **Background**

Petitioner operated a dangerous "one-pot" methamphetamine laboratory ("meth lab") in

his apartment in Goose Creek, South Carolina, while on probation for a prior drug offense. (Dkt.

No. 216 at 22 (presentence investigation report).)  On July 10, 2012, Petitioner was indicted for

violations of 21 U.S.C. §§ 841(a)(1), 846, and 860a. (Dkt. No. 3.)  A superseding indictment was

filed on September 12, 2012, alleging violations of 21 U.S.C. § 846 (conspiring to manufacture

more than 50 grams of methamphetamine), § 858 (creating a substantial risk of harm to human life

while manufacturing methamphetamine), and § 860a (manufacturing methamphetamine on

premises in which children were present and resided). (Dkt. No. 48.)  On April 25, 2013, a signed

plea agreement was filed. (Dkt. No. 113.)  Because of the strength of the Government's case,

defense counsel Cameron Blazer had difficulty negotiating a reduced sentence. (*See* Dkt. No. 286

at 29 (transcript of § 2255 motion evidentiary hearing); Dkt No. 265 at 13–16 (transcript of

sentencing hearing).)  However, as a result of Ms. Blazer's determined efforts, the Government

agreed to drop Count II of the superseding indictment and not to file an information regarding both

of Petitioner's prior felony drug offenses for the purpose of enhancing his sentence pursuant to 21 U.S.C. § 851. (*See id.* at 31–32 ("The original [mandatory sentence] was life. Miss Blazer, who has done a remarkable job in this case—and I thank you, [for] your continued representation of Mr. Abernathy here—used her persuasive skills with others to persuade the Government to give this Court an option . . . .").) Because of that negotiated plea, the statutory minimum sentence reduced from life to twenty years in prison, and the sentencing guideline reduced from life in prison to thirty years to life. (*Id.*)

Petitioner appeared before the Court and pled guilty to Count I and Count III of the superseding indictment. (Dkt. No. 264.) On August 13, 2014, Petitioner was sentenced. (Dkt. No. 265.) Petitioner confirmed that he had reviewed the presentence report and that he had no objections to it. (*Id.* at 2.) The presentence report included a six-point enhancement for manufacture of methamphetamine creating a substantial risk of harm to the life of a minor. (Dkt. No. 216 at 16.) The statutory minimum sentence was twenty years, the statutory maximum sentence was life, and the sentencing guideline range was thirty years to life. (Dkt. No. 265 at 3.) Petitioner was sentenced to thirty years in prison: 300 months for violation of 21 U.S.C. § 846 and 60 months for violation of 21 U.S.C. § 860a, to run consecutively. (*Id.* at 27.) The Court advised Petitioner of his right to appeal within fourteen days. (*Id.* at 32.) After the sentencing hearing, Ms. Blazer also advised Petitioner of his right to appeal. (Dkt. No. 286 at 15, 27.) Petitioner told Ms. Blazer that he did not wish to appeal. (*Id.*)

Petitioner timely filed the present *pro se* § 2255 petition on August 3, 2015. (Dkt. No. 255.) The petition challenges Petitioner's sentence, but not his convictions, on six grounds for relief: (1) the Court abused its discretion in considering for sentencing purposes the fact that Petitioner's offense conduct endangered the lives of other people, (2) the Government violated

Petitioner's Fifth Amendment right against self-incrimination by referring to statements made by Petitioner under a plea agreement which stated that those statements would not be used to enhance his sentencing guideline range, (3) the Court erred by considering unproven facts at sentencing, (4) a thirty-year sentence for a drug offense is "substantively unreasonable" on the facts of Petitioner's case, (5) Petitioner's Fifth Amendment right against double jeopardy was violated by conviction of violating both 21 U.S.C. § 860a and 21 U.S.C. § 846, and (6) facts considered at sentencing operated as a constructive amendment of the indictment and impermissibly raised the applicable statutory minimum sentence.  In a seventh ground for relief, Petitioner seeks a two-point downward adjustment in the sentencing guidelines calculation of his sentence pursuant to the 2014 Drug Guidelines Amendment.  Petitioner also requests a certificate of appealability.[1]

Petitioner asserted in the petition that he did not appeal the issues raised in his motion because Ms. Blazer refused to file an appeal on his behalf.  (Dkt. No. 255 at 14.)  The Court therefore ordered an evidentiary hearing on Petitioner's claims that Ms. Blazer did not advise him of his right to appeal, that he requested Ms. Blazer to file an appeal, and that Ms. Blazer refused to file an appeal, and on the issue of whether it was professionally unreasonable for Ms. Blazer not to advise him of his appellate rights (if she did not do so).  (Dkt. No. 270.)  The Court also appointed counsel to represent Petitioner, with the representation limited to the evidentiary hearing.  (Dkt. No. 273.)  Before hearing was held, Petitioner filed a supplement to correct his petition.  (Dkt. No. 282.)  In that correction, Petition admits that Ms. Blazer advised him of his appellate rights and that he never requested her to file an appeal.  (*Id.*)  He continues to assert that he was unaware of the 14-day deadline for filing an appeal.  (*Id.*)  At the evidentiary hearing,

---

[1] The Court construes Petitioner's request for a writ of certiorari "to" the Fourth Circuit as a request for a certificate of appealability.  (*See* Dkt. No. 255 at 18.)

Petitioner unambiguously testified that Ms. Blazer advised him of his right to appeal and that he told her that he did not want to appeal. (Dkt. No. 286 at 15.) He further testified that he first indicated that he wanted to appeal in a letter to defense counsel written many months later as part of the process of preparing the present § 2255 petition. (Dkt. No. 286 at 8–9.) That letter, however, makes no mention of any appeal. It merely asks what prior felony conviction was identified in the Government's information pursuant to 21 U.S.C. § 851, and whether Petitioner is eligible for a two-point reduction in his guideline offense level pursuant to the 2014 Drug Guidelines Amendment. (Dkt. No. 284.)

## II.    **Legal Standard**

Except for court-appointed representation limited to the evidentiary hearing, Petitioner appears *pro se* in the matter of the present petition. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980). *Pro se* petitions are therefore held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

Title 28 U.S.C. § 2255 requires a petitioner to prove by preponderance of the evidence that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

## III.    **Analysis**

It is well settled that other inmates may assist one another in preparing petitions for post-conviction relief in certain circumstances. *See Johnson v. Avery*, 393 U.S. 483, 490 (1969). But

here Petitioner had his petition written by an inmate who did not have access to the record, did not read what that inmate wrote before signing and filing the petition, and testified that he would not have signed the Petition had he read it.  (Dkt. No. 286 at 12–13.)  The Court is unaware of any other case in which a petitioner stands by his filing yet testifies that he would not have signed it if he had read it.  No motion to strike the petition is before the Court, however, and the Court chooses not to require Petitioner to show cause why the petition should not be stricken.  *See* Fed. R. Civ. P. 11(c)(3).

The Court finds no merit in the petition.  As detailed below, every ground for relief claimed (except Ground Seven) is barred by Petitioner's failure to file a direct appeal, which the Court finds—and Petitioner now admits—had nothing to do with Ms. Blazer, who was a highly effective, zealous advocate for Petitioner.  Furthermore, were they not procedurally barred, all of those grounds for relief would fail on the merits.

### A.    Petitioner's Withdrawn Allegation that Counsel Was Ineffective Because She Refused to File an Appeal

The Court considers Petitioner's claim that Ms. Blazer refused to file an appeal on his behalf separately from Petitioner's enumerated grounds for relief, because Petitioner asserted this with regard to every claimed ground for relief (except Ground Seven).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  The right to counsel guaranteed by the Sixth Amendment includes the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  In *Strickland*, the Supreme Court outlined counsel's responsibility to provide effective assistance and established a two-part test for determining whether counsel was ineffective.  Counsel is ineffective if: (1) his efforts were objectively unreasonable as measured

against prevailing professional norms and (2) counsel's errors were prejudicial. *Strickland*, 466 U.S. at 688–94. The court may consider either prong first and need not consider the other prong if the first is not sufficiently established. *Id.* at 697. Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the proceeding would have had a different result. *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, refusal to file a requested appeal is *per se* deficient performance under *Strickland* and the relevant prejudice inquiry is simply whether defendant would have appealed but for counsel's deficient performance. *Id.* at 477, 484. The defendant does not need to demonstrate that his appeal would have had merit. *Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). Thus, where the alleged deficient performance is a refusal to file an appeal when the defendant explicitly asks for one, proving that allegation necessarily satisfies the *Strickland* test for ineffective assistance of counsel. Conversely, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477.

Petitioner has withdrawn any allegation that Ms. Blazer did not inform him of his appellate rights and that she refused to file an appeal, and he now claims that he explicitly told Ms. Blazer not to file an appeal:

> THE COURT: She [Ms. Blazer] did advise you of your right to appeal, correct?
>
> THE DEFENDANT: Yes, sir. She asked me if I wanted to appeal.
>
> THE COURT: And your answer was no, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And did you at any point initiate a request to her at that time that you wanted to appeal?

THE DEFENDANT: Just this.

THE COURT: "Just this," being the letter months later, correct?

THE DEFENDANT: Yes, sir.

THE COURT: But at the time you did not—you did not tell her you wanted to appeal, correct?

THE DEFENDANT: Correct, sir.

THE COURT: And Ms. Blazer did not refuse your request to appeal, correct?

THE DEFENDANT: Correct.

(Dkt. No. 286 at 15.) The "letter" to which Petitioner referred was undated letter to Ms. Blazer stating his desire to contest his sentence. The envelope in which it was mailed to Ms. Blazer was postmarked in September 2, 2015—over a year past Petitioner's direct appeal deadline of Monday, September 1, 2014, and over five months after Petitioner filed the present petition. (*See id.* at 23–24; Dkt. No. 284 at 3.)

Petitioner continues to assert that he was unaware of the fourteen-day deadline for filing a notice of appeal. However, the Court's admonition at sentencing was clear.

> Now, let me advise Mr. Abernathy of his appeal rights. You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there's some other fundamental defect in the proceedings that was not waived by your guilty plea.
>
> You also have a right to appeal your sentence under certain circumstances, particularly if you believe the sentence is contrary to law. You must file the appeal within 14 days of the entry of judgment.
>
> Further, you have a right to apply to appeal *in forma pauperis*, and the Clerk of Court will prepare and file an appeal upon your request.

(Dkt. No. 265 at 32–33.)

The Court therefore finds that Petitioner was properly informed of his appellate rights, including the applicable fourteen-day deadline; that Ms. Blazer discussed an appeal with Petitioner and asked him if he wanted to file an appeal; and that Petitioner told Ms. Blazer that he did not wish to file an appeal. The Court finds no evidence suggesting that Petitioner's decision not to forego an appeal was unknowing or involuntary. Accordingly, the Court finds that Petitioner has not shown cause for failing to file an appeal and, therefore, Petitioner's failure to file a direct appeal procedurally bars every claimed ground for relief (except Ground Seven).

**B.      Grounds One and Three**

Petitioner was charged with creating a substantial risk to human life while manufacturing methamphetamine in Count II of the superseding indictment (Dkt. No. 48), but, pursuant to his plea agreement, he pled guilty only to Counts I (violation of 21 U.S.C. § 846) and III (violation of 21 U.S.C. § 860a) (Dkt. No. 265 at 33). When sentencing Petitioner on those two counts, the Court considered the fact that Petitioner's conduct resulted in the death of a child. (Dkt. No. 265 at 30.) Petitioner never pled guilty to Count II, and he denies causing the fire. (*See* Dkt. No. 255 at 4 (Petitioner describing the fire as accidental and claiming that it could not have been caused by a meth lab, because the meth lab was "non-existent"); Dkt No. 265 at 11 (Petitioner asserting at sentencing that he was passed out on methamphetamines when the fire occurred).) At sentencing, the Government conceded that it could not "establish any direct link between Mr. Abernathy's actions and the fire itself on that day." (Dkt. No. 265 at 13.) In Ground One, Petitioner claims that the Court therefore should not have considered facts establishing the elements of a § 858 violation—uncharged conduct—when sentencing him for violations of §§ 846 and 860a, because those facts were contested and unproven. In Ground Three, Petitioner asserts that he only admitted to using methamphetamine and conspiring to distribute methamphetamine, and that he never

operated or possessed a meth lab in his apartment. He claims that the court erred in considering the contested and unproven fact that he had a meth lab in his apartment when sentencing him.

In cases where the defendant pleads guilty, there are three main bodies of facts available to the sentencing court. First, the sentencing court has the defendant's affirmative, on-the-record admissions when pleading guilty—his *"Booker"* admissions. A *Booker* admission is a factual admission sufficient to bypass the Sixth Amendment right to have facts tried by a jury. *United States v. Milam*, 443 F.3d 382, 383 (4th Cir. 2006). "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005).

Second, there are those findings in the presentence investigation report to which the defendant does not object. But "failure to object at sentencing to the findings in the presentence investigation report does not constitute a *Booker* admission, although district courts may, of course, use undisputed, though not affirmatively admitted, facts in calculating an advisory Guidelines range." *United States v. Cox*, 194 F. App'x 164, 166 (4th Cir. 2006) (citation omitted). Thus, although the factual findings in a presentence report are "uncontested" if the defendant raises no objections to them, courts are constitutionally prohibited from using those findings to enhance a sentence beyond the maximum sentence permitted by the facts a defendant admits in court when pleading guilty.

Third, courts may "consider uncharged or even acquitted conduct during sentencing" if facts establishing that conduct are proven, even if the defendant contests those facts. *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009). Proof "by a preponderance of evidence is sufficient [to enhance a sentence using uncharged conduct] as long as the enhancement is not a tail that wags

the dog of the substantive offense." *Id.* at 801. A sentencing factor is "'a tail which wags the dog of the substantive offense'" if the sentencing factor is a necessary element of the crime charged." *Id.* at 800 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 86–88 (1986). For example, in *United States v. Milam* it was plain error to enhance a sentence by finding that a defendant was accountable for more drugs than admitted in his guilty plea. 443 F.3d 382, 384–84. "A defendant can challenge the district court's factual findings [regarding sentencing factors] as well as the extent of the district court's reliance on those findings as part of his appeal of the reasonableness of the sentence imposed." *Grubbs*, 585 F.3d at 799.

To the extent that Petitioner claims that the Court entered an unreasonable sentence that relied on unproven factual findings, Petitioner's decision not to file a direct appeal bars his claim. A § 2255 motion is not a substitute for a direct appeal. The appropriate forum in which to claim that this Court abused its discretion by unreasonably sentencing Petitioner is the United States Court of Appeals for the Fourth Circuit. *See Grubbs* at 799; *United States v. Apple*, 962 F.2d 335, 337 (4th Cir. 1992).

In addition to being procedurally barred, Petitioner's claims are without merit. In sentencing Petitioner, the Court considered only the first two of the above factual categories: Petitioner's guilty plea and the presentence report—to which Petitioner did not object and which the Court adopted as its statement of reasons for Petitioner's sentence (*See* Dkt. No. 265 at 2–3; Dkt. No. 220.) In other words, the Court relied only upon admitted facts. The record clearly shows that the Court did not consider any uncharged offense conduct, or make any factual findings regarding the cause of the deadly fire.[2] (*See* Dkt. No. 265 at 13, 20, 30–32.) The law requires the

---

[2] The presentence report states, "According to DEA's Harzard Assessment and Recognition Plan, 'clan[destine] lab certified personnel from the DEA Charleston responded to the explosion and fire that was caused by a clandestine methamphetamine laboratory.'" (Dkt. No. 216 at 5.) That

Court to consider the nature and circumstances of the offense when sentencing a defendant. 18 U.S.C. § 3553(a). The Court considered the fact that the manner in which Petitioner manufactured methamphetamine on premises where a child was present, in violation § 860a, endangered the child who was present—amply proven by the horrible fact that the child was burned alive while on the methamphetamine-manufacturing premises—and applied the applicable sentencing guideline. U.S.S.G. 2D1.10(b)(1)(A) ("If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels."). The Court found that Petitioner's conduct resulted in a child's death by immolation, not because the Court found that Petitioner started a fire, but because Petitioner unlawfully placed that child in a place of peril.

> That child would be alive today, but for the fact that he was present at a clear unmistakable violation of federal law and of all common sense. Regardless of whether one can prove or not prove directly the relationship between the tragic fire and the methamphetamine, what is unquestioned is that that child should not have been present, and had he not been present, he would be alive today.

(Dkt. No. 265 at 30.) Congress enacted 21 U.S.C. § 860a because meth labs are an unsafe place for children. The fact that a child was in fact harmed—killed—as a direct result of his presence at the premises where Petitioner manufactured methamphetamine is a proper consideration for sentencing for a violation of 21 U.S.C. § 860a. *See United States v. Keesee*, 498 F. App'x 297, 299–300 (4th Cir. 2012) (affirming increase in offense level for 21 U.S.C. § 860a violation pursuant to U.S.S.G. § 2D1.10(b)(1), where the defendant's one-pot method of manufacturing methamphetamine created a substantial risk of harm to the life of a child minor).

---

statement, which the Court adopted, is a report of an agency opinion, not a judicial finding of the underlying facts. Petitioner reviewed the presentencing report findings and had no objection. (Dkt. No. 265 at 2–3.) Because the Government conceded "the evidence wasn't such that we could establish any direct link between Mr. Abernathy's actions and the fire itself" (*id.* at 265 at 13), the Court made no factual finding regarding the cause of the fire in sentencing Petitioner.

Petitioner perhaps misapprehends the meaning of "meth lab" as the term is used in his case. At the evidentiary hearing, Petitioner testified, "I admitted to doing things in that apartment. I admitted to taking pills and putting them in charcoal lighter fluid, but I never started no meth lab in that apartment." (Dkt. No. 286 at 6.) A meth lab can be, but need not be, so substantial apparatus as a moonshine still. A bottle used to mix pseudoephedrine pills, lighter fluid, and certain other substances *is* a meth lab—a "one-pot" meth lab. *See* U.S. Drug Enf't Admin., National Drug Threat Assessment Summary 20 (2014). Petitioner admitted to using a "one-pot" meth lab when he testified that he took "pills" and put them in charcoal lighter fluid. Aside from that admission, Petitioner's denial of ever admitting that he operated or possessed a meth lab in his apartment is simply incorrect. At the plea hearing, the Government stated that a meth lab was located in Petitioner's bedroom (Dkt. No. 264 at 21–22). The presentencing report describes the accounts of multiple witnesses who saw Petitioner engaged in the manufacture of methamphetamine in the apartment on multiple occasions. (Dkt. No. 216 at 5.) Petitioner reviewed the factual findings contained in the presentence report, and, as Petitioner had no objections, those findings were adopted as the findings of the Court; Petitioner agreed that the facts stated by the Government were correct; Petitioner did not appeal his resulting conviction. He cannot now obtain relief from his sentence by denying those admitted facts. The Court therefore denies the petition as to Grounds One and Three.

### C.     Ground Two

In Ground Two Petitioner asserts that the Government violated his Fifth Amendment right against self-incrimination by referring to statements he made under a plea agreement, which provided that those statements would not be used to enhance his sentencing guideline range. Petitioner does not identify which statements purportedly were used improperly, but the Court need not identify those statements to dispose of this claim. Petitioner received two enhancements

to his guideline sentence calculation: one for an offense involving the manufacture of methamphetamine that creates a substantial risk of harm to the life of a minor, and one for being an organizer or supervisor of criminal activity. (Dkt. No. 216 at 15–16.) Petitioner admitted the facts underlying those enhancements when he pled guilty. (*See* Dkt. No. 265 at 22–24 (summary of facts supporting guilty plea stating, *inter alia*, that Petitioner manufactured methamphetamine in an apartment where minors were present, and that his role in the manufacture included recruiting and supervising other persons who bought the necessary pseudoephedrine).)     Moreover, Petitioner's failure to file a direct appeal bars this claim. *See Griffin v. Aiken*, 775 F.2d 1226, 1234 (4th Cir. 1985) (holding that a defendant's Fifth Amendment claim was barred "because he has not shown cause for failing to appeal the issue"). Petitioner disclaims any ineffective assistance of counsel claim regarding Ground Two, other than the now-withdrawn allegations regarding Petitioner's failure to file an appeal. (See Dkt. No. 286 at 33.) The Court therefore denies the petition as to Ground Two.

### D.     Ground Four

In Ground Four Petitioner claims that his sentence is "substantively unreasonable" because the offenses did not qualify for a career offender enhancement, because a thirty-year sentence for a "non-violent" drug offense is "substantively unreasonable," and because Petitioner cooperated with the Government.   He also claims that the sentencing guidelines were not treated as discretionary, and he repeats his challenge to the facts considered at sentencing.

The Court addresses Petitioner's challenge to facts considered at sentencing in the above analysis of his claims asserted under Grounds One and Three.   The United States Sentencing Guidelines are not binding on this Court, *see Booker*, 543 U.S. at 245, but Petitioner's conclusory statement that "USSG were not treated as discretionary" is belied by the record.  Ms. Blazer passionately argued for a downward departure to the statutory minimum of twenty years.  (Dkt.

No. 265 at 4–9.) The Court considered her argument carefully, as well as the Government's opposition to a downward departure (*id.* at 12–21), and decided that a downward departure was unwarranted in this case (*id.* at 29.). No career criminal enhancement was applied in calculating the sentencing guideline range applicable to Petitioner. (See Dkt. No. 216 at 18–19.) Petitioner has acknowledged that his cooperation with the Government resulted in a substantial sentence reduction—but for his cooperation, the mandatory minimum sentence would have been life. (Dkt. No. 286 at 15–16.)

The only substantial basis for relief asserted in Ground Four is that thirty years for manufacturing methamphetamine in his apartment, where children resided, and for distributing and conspiring to distribute more than fifty grams of methamphetamine, is unreasonably severe. That argument can be construed in one of two ways.

First, it may be a statutory challenge to the reasonableness of his sentence under 18 U.S.C. § 3553(a). This Court has authority to reduce a pronounced sentence on motion of the defendant only for clear error, within fourteen days of the pronouncement. Fed. R. Crim. P. 35. The Court can reduce a sentence after the Rule 35 window only if the case is remanded by an appellate court for that purpose. *Apple*, 962 F.2d at 337. And it can do so only for "arithmetical, technical, or other clear error"—language that clearly excludes non-technical, "substantive" error. Fed. R. Crim. P. 35. A direct challenge to the "substantive" reasonableness of the Court's consideration of the law and the facts at sentencing is a matter for the Fourth Circuit on direct appeal. And even if the Court could now reconsider Petitioner's sentence, Petitioner fails to assert any facts or raise any legal issues that the Court did not know and consider carefully when passing sentence.

If Petitioner means to raise this claim collaterally as an ineffective assistance claim (though he denies that, *see* Dkt. No. 286 at 33), his claim fails because there is no deficient performance

-14-

and no possible prejudice. Ms. Blazer's dogged negotiations ultimately obtained, from a reluctant Government, a plea agreement resulting in a guideline of thirty years to life rather than a mandatory life sentence. (Dkt. No. 286 at 29; Dkt. No. 265 at 31–32.) She then advocated for a downward variance from the guidelines (Dkt. No. 265 at 4–9), and obtained for her client a sentence at the bottom of the guideline for his offenses (Dkt. No. 286 at 16). Her exemplary representation of her client was not deficient in any way.

Nor did any possible prejudice to Petitioner result from failing to challenge the reasonableness of his sentence. A sentence within the guideline range is presumed reasonable on appeal. *Rita v. United States*, 551 U.S. 338 (2007) (holding that an appellate court may apply a presumption of reasonableness to a district court sentence within a properly calculated guideline range); *United States v. Go*, 517 F.3d 216, 218 (4th Cir. 2008) (holding that in the Fourth Circuit district court sentences within a properly calculated guideline range are presumed reasonable). Nothing about the circumstances of this case (*e.g.*, the fact that a young child was killed as a result of Petitioner's admitted offense conduct, or the fact that Petitioner has an extensive criminal background with two prior convictions that, but for the plea deal negotiated by Ms. Blazer, would have resulted in a mandatory life sentence) could possibly have moved the Fourth Circuit to consider a sentence at the bottom of the guideline range to be so unreasonably severe as to overcome that presumption of reasonableness.

Second, if Petitioner is making an Eighth Amendment challenge to the law under which he was sentenced, then his claim is foreclosed by Supreme Court case law. In *Harmelin v. Michigan*, the Supreme Court held that a sentence of life in prison without possibility of parole for merely possessing 650 grams of cocaine—without endangering anyone and without any prior felony convictions—was constitutional. 501 U.S. 957, 994–95 (1991); *see also Hutto v. Davis*, 454 U.S.

370 (holding that a forty-year sentence for possession and distribution of nine ounces of marijuana is constitutional). The Supreme Court teaches that for any felonious drug offense, a term of incarceration of any length is constitutional.

Thus, Ground Four of the Petition has no merit no matter how it is construed. The Court therefore denies relief as to Ground Four.

### E. Ground Five

In Ground Five Petitioner claims that his Fifth Amendment right against double jeopardy was violated when he was convicted of two offenses, violations of 21 U.S.C. § 846 and 21 U.S.C. § 860a, carrying consecutive sentences, for the same conduct. Petitioner was sentenced to twenty-five years for conspiring to manufacture and/or distribute methamphetamine, in violation of § 846, and to five years for manufacturing or distributing methamphetamine at premises where minors were present, in violation of § 860a. The sentence for violating § 860a must consecutively with any other sentence imposed for the underlying methamphetamine offense. 21 U.S.C. § 860a.

In *Blockburger v. United States*, the Supreme Court held that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). It is well settled that "a conspiracy to commit a crime is a separate offense from the crime itself." *United States v. Felix*, 503 U.S. 378, 391 (1992). Regardless, Petitioner was not even charged of the substantive offense underlying the conspiracy charge, because the Government dropped that charge from the superseding indictment (*Compare* Dkt. No. 3 *with* Dkt. No. 48.) The conspiracy count to which Petitioner pled guilty, § 846, requires proof of facts—an agreement between two or more persons to violate 21 U.S.C. § 841—not required by § 860a. 21 U.S.C. §§ 846 & 860a; *United States v. Mills*, 995 F.2d 480 (4th Cir. 1993) (stating the essential elements of a conspiracy in violation of § 846). Likewise, § 860a

requires proof of facts—the presence of a minor at a place of methamphetamine manufacture—not required by § 860a. *Id.* Petitioner's double jeopardy claim is meritless. The Court denies relief as to Ground Five.

### F.    Ground Six

In Ground Six Petitioner claims (1) that the indictment was constructively amended and (2) that the Court treated certain facts increasing the applicable mandatory minimum sentence to twenty years as sentencing factors rather than as elements of the charged offense, in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In his reply to Respondents' motion for summary judgment, Petitioner adds the claim that his plea was not voluntary because his mental capacity was diminished due to habitual drug use. (Dkt. No. 269 at 2.)

#### 1.    Constructive Amendment Claim

A constructive amendment of an indictment is a "fatal variance" between the Government's allegations in the indictment and the Government's presentation of the evidence or the trial court's instructions to the jury. *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). "A constructive amendment is a fatal variance because the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" *Id.* (quoting *United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991). Thus, a constructive amendment is a *per se* violation of the Fifth Amendment right to be indicted by a grand jury and must be corrected on appeal even when the defendant did not preserve the issue by objection. *Id.*

Petitioner, of course, did not take an appeal, but the Court need not consider procedural issues because the claim manifestly has no merit. The government did not present evidence to prove the indictment allegations—instead, Petitioner admitted the allegations. There was no jury to instruct. Constructive amendment of the indictment was impossible in this case. *See United*

*States v. Taylor*, Crim. No. 6:02-1051-HMH, 2009 WL 4919397, at *1 (D.S.C. Dec. 10, 2009) ("[A]llegations of a defective indictment based on constructive amendment are waived by pleading guilty.").

   2. *Alleyne* Claim

  *Alleyne* requires any fact that increases the statutory minimum sentence to be proven at a jury trial. 133 S. Ct. at 2155. Admission of facts that must be proven at a jury trial—*Booker* admissions—must occur as part of the guilty plea. *Milam*, 443 F.3d at 383. The petition does not identify the facts at issue regarding his *Alleyne* claim, but Petitioner's reply brief identifies "'endangerment' and/or 'Death Results.'" Petitioner's contention, apparently, is that the Court applied a statutory minimum of twenty years, rather than ten years, in his case because persons were injured and killed in the fatal fire that started in his bedroom. Petitioner's contention is factually incorrect and appears to rest on a misreading of the law.

  No statutory minimum applies to § 860a. The statutory minimum applicable to § 846—which is the applicable statutory minimum in Petitioner's case—is the same as the statutory minimum that would apply for the offense which was the object of the conspiracy. The statutory minimum sentence for the object of Petitioner's conspiracy—violation of § 841(a)(1) involving 50 grams or more of methamphetamine—is ten years, unless either "serious bodily injury results from the use of such substance" or the defendant has the defendant has prior felony drug convictions. 21 U.S.C. § 841(a)(1)(A). Petitioner apparently confuses the two circumstances in which a mandatory minimum of twenty years applies. A twenty-year statutory minimum did not apply to Petitioner because substantial harm resulted from the use of methamphetamine manufactured or distributed by Petitioner. Under *Alleyne*, that would require establishing such harm to be admitted as part of the plea or proven at a jury trial. *See* 133 S. Ct. at 2155. Rather, Petitioner was subject to a twenty-year statutory minimum because he had a prior drug-related felony conviction. (*See,*

*e.g.*, Dkt. No 216 at 13–14 (detailing Petitioner's second state conviction for cocaine possession, a felony under South Carolina law (*see* S.C. Code § 44-53-370(d)(3))).) The fact of a prior conviction does not need to be admitted or proven at trial. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Rule 11(c)(1) of the Federal Rules of Criminal Procedure requires that the Court inform defendants of the statutory minimum sentence before accepting a guilty plea. The Court did so. (Dkt. No. 264 at 16–17.) As part of his plea agreement, the Government did not file an information, pursuant to 21 U.S.C. § 851, for both of Petitioner's prior felony drug-related convictions. Had the government done so, the statutory minimum sentence would have been life. 21 U.S.C. § 841(a)(1). In consideration of Petitioner's substantial cooperation, and after zealous negotiation by Ms. Blazer, the Government agreed to file an information on only one of Petitioner's prior drug-related felonies. (Dkt. No. 264 at 16–17; Dkt. No. 113 at 7.). The Government also dropped Count II of the superseding indictment, which charged Petitioner with a violation of § 858 (endangering human life while illegally manufacturing a controlled substance). (Dkt. No. 265 at 33.) Petitioner has testified that he did understand, when pleading guilty, that he was pleading to offenses carrying a minimum sentence of twenty years and a guideline range of thirty years to life, and that he was pleading guilty to avoid a mandatory sentence of life imprisonment if convicted at trial. (Dkt. No. 286 at 15–16.) He was correctly informed of the statutory minimum, and he has testified that he in fact correctly understood the statutory minimum. His level of understanding of the details of how sentencing guideline ranges and statutory minimum sentences are calculated is immaterial to his claim for relief. *See United States v. Gen.*, 278 F.3d 389, 395 (affirming sentence where, "[i]mportantly, [defendant] does not contend that he did not understand the statutory mandatory minimum sentence as provided in the plea agreement").

### 3.  Diminished Mental Capacity Claim

Finally, in his reply brief, Petitioner claims that he was mentally incompetent to plead guilty at sentencing due to the lingering ill effects of his methamphetamine addiction. (Dkt. No. 269 at 2.) The Court found Petitioner competent at his guilty plea. (Dkt. No. 264 at 24–25.). The Court asked Petitioner if "the fact that you previously had a difficulty with alcohol and/or drugs [imposes] any difficulty [in] understanding the proceeding here today." (*Id.* at 4.) Petitioner responded, "No, sir." (*Id.*) The Court also asked Ms. Blazer if she had any doubt as to Petitioner's competence to plead; she answered that she had no doubt. (*Id.*) Petitioner was not under the influence of any drug when he pled guilty, as he had then been in custody for over two years. Petitioner alleges no facts suggesting that he was not competent to plead. "[B]ald assertions" of diminished mental capacity first raised in a § 2255 motion are insufficient for relief. *See United States v. Reid*, 387 F. App'x 352, 354 (4th Cir. 2010).

Petitioner's claims under Ground Six therefore are without merit, and the Court denies relief as to Ground Six.

### G.    Ground Seven

The Court finds that Petitioner is entitled to a two-point reduction in his sentencing guidelines calculation because of the 2014 Drug Guidelines Amendment. (*See* Dkt. No. 272 (sentence reduction report).) Petitioner's offense level is now properly calculated as 37 points, not 39 points. His criminal history category remains VI. (Dkt. No. 216 at 14.) A two-point reduction has no effect on the calculation of Petitioner's guideline sentencing range. The guideline sentencing range at 37 points and criminal history category VI is 360 months to life, which is identical to the guideline sentencing range at 39 points. (Dkt. No. 272); *see also* U.S.S.G. ch. 5, pt. A (Sentencing Table). Nonetheless, counsel for Petitioner has stated that the reduction could have some value for Petitioner. (Dkt. No. 286 at 3.) To the extent that is true, this finding should

suffice to inure such benefit to Petitioner. Before the Court, however, is a motion to vacate sentence. Because the two-point reduction does not change the guideline sentence, it has no merit as a basis for relief.

Furthermore, the Court, considering the nature and circumstances of Petitioner's offenses at a 37-point offense level and the characteristics of Petitioner as a criminal history category VI offender, finds that a sentence of thirty years—the bottom of the sentencing guidelines range—is sufficient, but not greater than necessary, to reflect the seriousness of Petitioner's offenses, to adequately deter criminal conduct, and to protect the public from further crimes of Petitioner. *See* 21 U.S.C. § 3553(a). The Court therefore finds that, under 21 U.S.C. § 3553, Petitioner's sentence of thirty years for 37-point offense conduct is reasonable.

Therefore, although Petitioner is entitled to a two-point reduction in his offense level, he is not entitled any reduction in his sentence as to Ground Seven.

## IV.    Conclusion

For the reasons set forth above, the Court **DENIES** Petitioner's motion to vacate (Dkt. No. 225) and **GRANTS** Respondent's motion for summary judgment (Dkt. No. 282).

### Certificate of Appealability

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*,

537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).   In this case, the legal standard for the issuance of a certificate of appealability has not been met.   Therefore, a certificate of appealability is **DENIED**.

      **AND IT IS SO ORDERED.**

                                      Richard Mark Gergel
                                      United States District Court Judge

March 22, 2016
Charleston, South Carolina